UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 3:15-CV-1127 |
| | ) | |
| v. | ) | Judge Collier |
| | ) | |
| JOSEPH McGREGOR ANDREWS, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## M E M O R A N D U M

Before the Court are motions for summary judgment filed by Defendant Joseph McGregor Andrews ("Andrews") and Plaintiff Jane Doe[1] ("Doe") in this diversity action arising out of an alleged sexual assault at a college fraternity house.[2]  Andrews moves for summary judgment on the causes of action Doe has brought against him for false imprisonment, assault and battery, and intentional infliction of emotional distress.  (Doc. 124.)  Doe responded in opposition.  (Doc. 155.)  Doe moves for summary judgment on Andrews's counterclaim for defamation and intentional infliction of emotional distress, as well as his request for attorney fees. (Doc. 136.)  Andrews responded (Doc. 154), and Doe replied (Doc. 166).

The Court will **GRANT** Andrews's motion (Doc. 124) **IN PART** as to false imprisonment and **DENY** the motion **IN PART** as to assault, battery, and intentional infliction of emotional distress.  The Court will **GRANT** Doe's motion (Doc. 136) **IN PART** as to defamation and attorney fees.  The Court will **DENY** the motion **IN PART** as to intentional infliction of emotional distress.

---

[1] Doe is a pseudonym used in public filings pursuant to a protective order.  (Doc. 12.)

[2] The Court will address by a separate memorandum and order the motions for summary judgment filed by the three organizational defendants.

## I.     BACKGROUND

During the spring of 2015, Doe was an undergraduate student at Samford University in Birmingham, Alabama.  Andrews was an undergraduate student at the University of Tennessee at Chattanooga ("UTC") and a member of The Delta Epsilon Chapter of Pi Kappa Alpha International Fraternity, Inc. (the "Chapter").

Doe and Andrews first met when Andrews went to Birmingham to visit his then-girlfriend, Hailey Smith, who was a student at Samford University and a dorm mate of Doe's.  After Andrews's and Smith's dating relationship ended, Andrews and Doe began to communicate with each other by social media.  These communications included an invitation from Andrews to Doe to attend an April 11, 2015 party at the Chapter's off-campus fraternity house (the "House").

On the day of the party, Doe and a friend, Kaleigh Palmisano, drove to Chattanooga.  They went to Andrews's dorm room to get ready; Andrews was already at the House for the party.  After getting ready, Doe contacted Andrews and asked him to pick her up for the party.  Andrews went with several other people to pick Doe up.  Palmisano went elsewhere to meet her boyfriend.  Doe had one swig of whiskey in the car on her way to the House.  According to Doe, while in the car, Andrews said she was going to get "blackout" that night and talked about "hooking up" with her, in response to which she told him she did not want to have sex with him.  Doe also alleges the Chapter pledge who was designated as a sober driver for the event, and who was driving the car, agreed to look after her.

After arriving at the House, Doe and Andrews spent a short time at the party, during which time Doe did not consume any alcohol.  Doe and Andrews then went to a liquor store and a gas station to buy more alcohol.  On returning to the House, Doe and Andrews stayed on the

porch for a time. Doe consumed three or four swigs of whiskey while on the porch. Doe alleges Andrews encouraged her to keep drinking when she did not want to, at times holding the bottle to her mouth for her to drink. This was the last alcohol Doe consumed that night. Andrews claims Doe's total consumption was four swigs of whiskey. Doe claims her total consumption was at least five swigs of whiskey and one beer between the hours of 8:30 and 10:00 p.m.

At some point later, Doe and Andrews left the porch and entered the House to attend the party. Doe asserts she does not remember anything that happened between when she left the porch and the next morning.

Andrews, however, gives the following account of events at the party, and Doe does not dispute this account for purposes of Andrews's motion for summary judgment. Once at the party, Doe and Andrews separated. Doe later approached Andrews, took him by the hand, and led him into the bathroom. Doe closed and locked the bathroom door. Doe began kissing Andrews. Doe removed Andrews's pants and her own shorts and panties. Andrews sat Doe on the sink and unhooked her bra. They began to rub against each other. Andrews is not sure if penetration took place given the angle and the space between the two. After a short time Doe began crying and Andrews stopped any sexual activity. Andrews sat on the toilet seat and Doe sat on his lap. She told him she had breast cancer and she had been raped as a child. Andrews attempted to comfort Doe. He offered to take her back to his room where she could sleep in his bed and he could sleep on the couch. They got dressed, called a sober driver, and went to Andrews's dorm. There is no allegation of sexual contact other than in the House bathroom.

Back at Andrews's dorm, Andrews took a photograph of Doe lying in his bed, fully clothed. He sent the picture to his ex-girlfriend, Smith, with the statement "I f**ked [Jane Doe] and it was great." According to Andrews, he did this because he was angry at Smith for having

cheated on him before their breakup. Andrews claims he first learned of Smith's infidelity from Doe earlier that evening, before the events in the bathroom. Doe denies having talked to Andrews about Smith's alleged infidelity and claims Andrews already knew before the party that Smith had cheated on him during their relationship.

Doe later vomited in Andrews's bed. Palmisano arrived back at Andrews's dorm room and helped Doe clean herself up. Andrews went back to the party after Palmisano's arrival. Palmisano and Doe slept in their car that night. Andrews later went to a friend's house to sleep.

The next morning, Palmisano and Doe returned to Samford. Doe had no memory of a sexual encounter between Andrews and herself, but she discussed the events of the previous night with Palmisano and Smith, who had received Andrews's message and picture the night before. Doe then asked Andrews on the phone whether they had had sex the night before, and he said they kind of had. Doe discussed the alleged sexual assault with Palmisano, Smith, and a number of other individuals. Doe also went to two rape crisis centers and made a complaint to law enforcement at UTC.

## II.    <u>STANDARD OF REVIEW</u>

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). A factual dispute is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the

nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The Court may not weigh the evidence or make credibility determinations. *Id.* at 255. If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.  DISCUSSION

### A.  Doe's Causes of Action Against Andrews

Doe's complaint includes three counts against Andrews: false imprisonment, assault (including causes of action for assault, battery, sexual assault, aggravated sexual battery, sexual battery, rape, and aggravated rape), and intentional infliction of emotional distress.  (Doc. 1.)  Andrews moves for summary judgment on all three counts, but addresses only the assault and battery causes of action of the "assault" count.  (Doc. 124.)  Doe responded in opposition. (Docs. 155–57.)

### 1.  False Imprisonment

Doe's Complaint alleges Andrews falsely imprisoned her in that "[t]hrough the use of drugs and/or alcohol, Defendant Andrews knowingly confined Plaintiff unlawfully so as to interfere substantially with her liberty."[3]  (Doc. 1 ¶ 60.)  Andrews moves for summary judgment as to this cause of action.  (Doc. 124-1 at .)

Under Tennessee law, the elements of the tort of false imprisonment are: (1) the plaintiff was restrained or detained against her will by a defendant; and (2) the restraint or detention was unlawful.  *Newsom v. Thalhimer Bros., Inc.*, 901 S.W.2d 365, 367 (Tenn. Ct. App. 1995) (citing *Coffee v. Peterbilt of Nashville, Inc.,* 795 S.W.2d 656, 659 (Tenn. 1990)).  Feeling mentally restrained is not sufficient to establish false imprisonment; the restraint must be against the plaintiff's will, such as when the plaintiff yields to force, the threat of force, or the assertion of authority.  *Id.* (quoting and adopting conclusion of *Faniel v. Chesapeake & Potomac Tel. Co.*, 404 A.2d 151–52 (D.C. 1979)).

---

[3] Doe's claim for false imprisonment cites to and tracks the language of Tennessee's criminal false-imprisonment statute, Tenn. Code Ann. § 39-13-302.

Andrews argues there is no evidence he restrained or detained Doe. Doe does not respond with any evidence of restraint or detention. Instead, she argues she never consented to be alone with Andrews. (Doc. 155 [Pl.'s Memo.] at 7.) But the tort of false imprisonment does not turn on whether a plaintiff consented to be alone with the defendant; it turns on whether a defendant restrained or detained the plaintiff against the plaintiff's will.

Andrews also argues Doe consumed no more than four swigs of whiskey, so she could not have been too intoxicated to consent. Doe counters that she was a small young woman who had drunk at least five swigs of whiskey and a beer on an empty stomach. Further, she has testified in her declaration that she was "black out drunk" that night. (Doc. 156-2 [Doe Decl.] ¶¶ 4, 7.) There is therefore an issue of fact both as to the amount of alcohol Doe consumed and the degree of intoxication that resulted. But even assuming Doe was too intoxicated to consent, there is no evidence from which Plaintiff can satisfy the element of restraint or detention. The factual dispute as to Doe's level of intoxication is therefore immaterial to Andrews' motion for summary judgment on false imprisonment.

The Court finds no evidence Andrews restrained or detained Doe. Taken in the light most favorable to Doe, the evidence shows Doe was in a bathroom with Andrews with the door locked from the inside, and Andrews engaged in sexual contact to which Doe had previously said she would not consent and to which Doe was at that time too drunk to give legally effective consent. The Court sees multiple things wrong in this scenario, but restraint and detention are simply not among them. There is no evidence Andrews caused Doe to enter the bathroom, let alone forced her to do so. There is no evidence he closed or locked the door. There is no evidence he stopped her from unlocking or opening the door once they were there. There is no evidence he otherwise stopped Doe from leaving the bathroom or restrained her by force or by

threat while they were there. In short, sexual contact without consent is not the same thing as restraint or detention against one's will.

Doe also argues she was so intoxicated she could not leave. (*Id.* at 8.) While Doe has testified she was "black out drunk," in the sense that she cannot remember what happened, there is no evidence from which the Court can reasonably infer Doe was too intoxicated to be able to leave the bathroom if she had wished to do so. Doe has presented evidence that she vomited and passed out after returning to Andrews's dorm room. (Doc. 156-1 [Palmisano Dep.] at 27.) Even so, there is no evidence from which the Court can infer Doe was unconscious or unable to walk on her own while she was still at the House. The evidence instead indicates that, despite the level of intoxication the Court must infer for purposes of Andrews's motion for summary judgment, Doe was conscious and walking around the House on her own.

Doe has pointed to no authority that would allow the Court to substitute sexual contact without legal consent for the element of restraint or detention for purposes of false imprisonment. Doe's arguments, like the allegations in her Complaint, are more closely aligned with the Tennessee statute defining the crime of false imprisonment than with Tennessee common law defining the civil tort of false imprisonment. The only false-imprisonment case Doe cites in her response, for example, is a criminal case that lends no support to the idea that sexual contact without consent constitutes false imprisonment. *See State v. White*, 362 S.W.3d 559, 579 (Tenn. 2012). It may at times be appropriate to look to the interpretation of an element of a crime when interpreting a similar element of a corresponding tort. *See Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 370 (Tenn. 2011) (relying in part on interpretation of criminal assault statute to determine the intent necessary to sustain a civil claim for the tort of assault) (citing 6 Am. Jur. 2d *Assault & Battery* § 85 (2008)). Doe has provided no

authority, however, for the proposition that the Court should make a wholesale substitution of the criminal false-imprisonment statute for the civil tort of false imprisonment. The Court therefore applies Tennessee's civil tort law here. *See, e.g.*, *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998-00992-COA-R9-CV, 2001 WL 327906, at *7 (Tenn. Ct. App. Apr. 5, 2001) (holding that defense of minor's consent to sexual contact was available in civil action even though not relevant in related criminal prosecution for statutory rape because "criminal and civil proceedings have different purposes" and "civil actions for damages should be left to proceed under ordinary tort law principles").

The Court concludes there is no genuine dispute of a material fact as to whether Doe was detained or restrained against her will. Andrews is therefore entitled to summary judgment on Doe's cause of action for false imprisonment.

### 2. Assault and Battery

In Count D of her Complaint, Doe brings claims against Andrews for assault, battery, sexual assault, aggravated sexual battery, sexual battery, rape, and aggravated rape, citing Tennessee's criminal statutes defining these crimes. (Doc. 1 ¶ 66 (citing Tenn. Code Ann. §§ 39-13-101, 39-13-502–505).) Andrews moves for summary judgment as to assault and battery. (Doc. 124-1 at 11–12.)

Assault was defined at common law as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." *Thompson v. Williamson Cty., Tenn.*, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997), *aff'd* 219 F.3d 555 (6th Cir. 2000) (quoting *Vafaie v. Owens*, No. 92C-1642, 1996 WL 502133, at *3 (Tenn. Ct. App. Sept. 6, 1996). In Tennessee, the tort of assault has two elements: "(1) An intentional attempt or the unmistakable

appearance of an intentional attempt to do harm to, or to frighten, another person; and (2) The present ability or the unmistakable appearance of the present ability to do that harm or to cause that fright." T.P.I. Civil § 8.01; *see also Hughes*, 340 S.W.3d at 371 (holding intent to create apprehension of harm in the plaintiff is sufficient to support tort of assault).

Tennessee courts define the tort of battery as "an intentional act that causes an unpermitted, harmful or offensive bodily contact." *Lacy v. Hallmark Volkswagen Inc. of Rivergate*, No. M2016-02366-COA-R3-CV, 2017 WL 2929502, at *4 (Tenn. Ct. App. 2017) (quoting *Mama Taori's*, 2001 WL 327906, at *4); *see also* T.P.I. Civil § 8.02 ("A battery is any intentional, unlawful, and harmful (or offensive) physical contact by one person with another person."). Contact is "offensive" for purposes of the tort if it "infringes on a reasonable sense of personal dignity ordinarily respected in a civilized society." *Id.* (quoting *Mama Taori's*, 2001 WL 327906, at *4).

Andrews's sole argument for summary judgment on assault and battery is that there is no evidence he intended to harm Doe. He argues that neither assault nor battery can exist "without an intentional injury of the person upon whom the wrong is inflicted." (Doc. 124-1 at 11 (quoting *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *21 (E.D. Tenn. Dec. 12, 2005).) Doe responds that Andrews's intent to have sex with Doe, which Doe argues may be inferred from the circumstances, is sufficient to support her claims for assault and battery.

Contrary to Andrews's argument, "[t]he intent required for a battery is not an intent to cause harm. It is an intent to do the act that causes the harm." T.P.I. Civil 8.02. Andrews quotes *Ritter* for the proposition that both assault and battery require an intentional injury, from which he infers that the necessary intent is the intent to cause harm. (Doc. 124-1 at 11 (quoting

*Ritter*, 2005 WL 3369616, at *21.)  The inference does not follow.  *Ritter* relies on *Thompson*, 965 F. Supp. at 1038, which states in relevant part as follows:

> In Tennessee, it is elementary that there cannot be an assault and battery without a **willful injury** of the person upon whom the wrong is inflicted. *Moffitt v. United States,* 430 F.Supp. 34, 37 (E.D. Tenn. 1976). The word "willful" means nothing more than intentional. *Id.* In other words, an indispensable element of the evidence necessary to support an assault or battery cause of action is that **the striking** is willful and intentional.

*Thompson*, 965 F. Supp. at 1038 (emphasis added).  The term "willful injury" thus refers to an injury resulting from an intentional action, not an injury inflicted with the intention to harm.

Andrews is not entitled to summary judgment on Doe's causes of action for assault or battery.

### 3.      Intentional Infliction of Emotional Distress

Doe asserts a claim for intentional infliction of emotional distress against Andrews. (Doc. 1 ¶¶ 71–77.)  Andrews moves for summary judgment on this cause of action.

In order to prove intentional infliction of emotional distress in Tennessee, a plaintiff must show all of the following elements: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)); *see also Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 502–03 (Tenn. 2012). The tort does not extend to "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Swallows v. Western Elec. Co.*, 543 S.W.2d 581, 583 (Tenn. 1976) (quoting Restatement of Torts (2d) § 46, cmt. (d)).  Furthermore, the conduct in question cannot be merely tortious or even criminal; it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable

in a civilized community." *Lourcey*, 146 S.W.3d at 51 (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999)).

Andrews argues Doe cannot satisfy the second element, conduct so outrageous it cannot be tolerated by civilized society. Given Doe's lack of memory of the sexual encounter between them, he argues the "undisputed evidence shows that a reasonable person in Andrews'[s] position would have been confident that he had received consent for all contact with [Doe]." (Doc. 124-1 at 12–13.) Doe responds that two acts by Andrews qualify as outrageous conduct: having sex with Doe without her consent and sending her photo to Smith with the caption "I f**ked [Jane Doe] and it was great."[4]

Andrews is correct that there is evidence Doe was not intoxicated and she initiated the sexual activity between them. For purposes of Andrews's motion, however, the Court must take all of the evidence and reasonable inferences in the light most favorable to Doe. Seen in this light, there is evidence Andrews forced or encouraged Doe to drink because he wanted to have sex with her despite her statements to the contrary, she became severely intoxicated, he engaged in sexual activity with her without her consent, and he did all of this out of spite towards Smith. The Court accordingly concludes a reasonable jury could find Andrews's conduct was so outrageous it cannot be tolerated by civilized society. *See Boyl v. Merchants Distribs., Inc.*, No. 3:04-cv-00487, 2006 WL 2612732, at *1, *6 (E.D. Tenn. Sept. 8, 2006) (finding sufficient evidence to go to a jury on outrageous conduct where defendant's employee showed his groin and part of his genitalia to plaintiff); *Scarborough v. Brown Group, Inc.*, 935 F. Supp. 954, 963 (W.D. Tenn. Oct. 31, 1995) (finding sufficient evidence of outrageous conduct to survive motion

---

[4] Andrews does not contest that sending the photograph was not outrageous conduct as a matter of law.

to dismiss claim where defendant made requests for sexual favors and liaisons, lewd comments and gestures, and attempted to get into one plaintiff's home).

Andrews next argues Doe cannot satisfy the third element of intentional infliction of emotional distress, serious mental injury. He argues Doe saw a school counselor at most five times, and that was only to satisfy disciplinary action for using marijuana in her dorm, not because of Andrews. He argues she takes no medication for depression or anxiety and any physiologic or psychological symptoms that may have existed are no longer present, given her strong academic performance. Doe responds that, as set out in her declaration (Doc. 156-2) and deposition testimony, she visited two rape crisis centers, still sees a counselor, experiences fear in social interactions and for her physical security, experiences humiliation, and missed classes, exams, and work in the immediate aftermath of the events.[5]

The Tennessee Supreme Court has set out the following non-exclusive list of factors to consider in determining whether a plaintiff has suffered a serious mental injury as required for the tort of intentional infliction of emotional distress:

> (1) Evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
>
> (2) Evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
>
> (3) Evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical

---

[5] Doe also points to expert testimony that she may be suffering from post-traumatic stress disorder and stage two rape trauma syndrome. This potential expert testimony is the subject of a motion to exclude. (Doc. 126.) Because there is enough other evidence of damages for Doe's claims to survive summary judgment, the Court does not consider this potential expert testimony for purposes of Andrews's motion for summary judgment.

depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;

(4) Evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;

(5) Other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and

(6) In certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

*Rogers v. Louisville Land Co.,* 367 S.W.3d 196, 209–10 (Tenn. 2012). This evidence may be established through the testimony of the plaintiff or other lay witnesses who know the plaintiff or by medical experts. *Id.* at 210.

Doe has provided sufficient evidence from which a reasonable jury could conclude she suffered a serious mental injury. It will be for the jury to decide, for example, whether Doe's counseling was related to Andrews's actions or not, and whether her testimony establishes a serious mental injury. Andrews is not entitled to summary judgment on Doe's cause of action for intentional infliction of emotional distress.

### 4.     Damages

Andrews seeks summary judgment on all of Doe's claims because she has not provided evidence of damages and she cannot prove Andrews acted intentionally, fraudulently, maliciously, or recklessly so as to entitle her to punitive damages. Doe responds that she suffered the physical injury of a broken tooth during the sexual assault, as well as the emotional injuries described above. She also argues that Andrews's actions in both the sexual activity and the taking and sending of Doe's pictures were intentional.

As discussed in the two foregoing sections, there is sufficient evidence from which a jury could find Doe has suffered damages. In addition, Doe's assault claims and her claim for

intentional infliction of emotional distress require a finding by the jury that Andrews acted intentionally or recklessly. Both of these states of mind are permissible bases for punitive damages. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) ("In Tennessee, . . . a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly.") Andrews's motion for summary judgment on damages will be denied.

**B.      Andrews's Counterclaims Against Doe**

Andrews asserts counterclaims against Doe for defamation and intentional infliction of emotional distress. (Doc. 46.) He also seeks attorney's fees. Doe moves for summary judgment on both causes of action and argues Andrews is not entitled to attorney's fees. (Doc. 136.) Andrews responded (Doc. 154), and Doe replied (Doc. 166).

**1.      Defamation**

Andrews claims Doe defamed him by publishing false statements that their sexual activity was non-consensual and/or constituted rape. (Doc. 46.) He claims Doe made these defamatory statements both orally and in writing.

The elements of defamation under Tennessee law are (1) the defendant published a statement and (2) the defendant knew the statement was false and defaming to the plaintiff or (3) the defendant acted with reckless disregard for the statement's truth or was negligent in failing to determine the statement's truth. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. 2013). "Publication" in this context means communicating the defamatory matter to a third person. *Id.* (quoting *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994)). A defamatory statement is one that constitutes a serious threat to the plaintiff's reputation. *Id.* (quoting *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001)).

In addition, a plaintiff must prove actual reputation damages from the defamation; damages cannot be presumed. *Id.* at 51 (quoting *Davis*, 83 S.W.3d at 128.) Actual damages may be "impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering." *Id.* (quoting *Murray v. Lineberry*, 69 S.W.3d 560, 464 (Tenn. Ct. App. 2001)). Spoken defamation constitutes slander, while written defamation constitutes libel. *Quality Auto Parts Co.*, 876 S.W.2d at 820.

Doe has submitted a declaration stating that she discussed Andrews's assaulting her with her dorm mates in April 2015 and made oral and written statements about Andrews's assaulting her to law enforcement personnel at the University of Tennessee at Chattanooga. (Doc. 139-2 ¶¶ 4–5.) Other than that, Doe declares she has not discussed the assault with anyone other than her family, her lawyers, or medical personnel or made any written statements about the alleged assault (Doc. 139-2 ¶¶ 6–7.) Doe argues Andrews's slander claim is barred by the statute of limitations. She argues his libel claim cannot survive because he has not identified any actionable written statements by Doe.

### a.    Slander

Doe argues Andrews's slander claim is barred by the statute of limitations. Tennessee has a six-month statute of limitations for slander actions, running from the time at which the slanderous words are uttered. Tenn. Code Ann. § 28-3-103. Andrews filed his original counterclaim for slander on December 23, 2015. (Doc. 40.) Oral statements made before June 22, 2015, are therefore barred by the statute of limitations. This includes Doe's April 15, 2015 statements to Palmisano, Smith, and other dorm mates or friends that Andrews had raped or sexually assaulted her. Doe, relying on her declaration testimony that she has made no other oral

statements about Andrews assaulting her except to her family, her lawyers, or medical providers, argues Andrews's slander claim is barred by the statute of limitations.

In response, Andrews argues Doe made defamatory statements to Palmisano as recently as two weeks before Palmisano's October 2016 deposition. He alleges these statements show Doe has made slanderous statements within the statute of limitations. He also alleges this makes Doe's statements to the contrary in her declaration not credible.

The Court sees no evidence of slanderous statements within the statute of limitations. Andrews attaches the following excerpt of Palmisano's deposition testimony to support his allegation of recent defamatory statements by Doe:

> Q.     When was the last time that the two of you spoke?
>
> A.     Like two weeks ago.
>
> Q.     And who called who?
>
> A.     I asked her how long the deposition would take. She told me.
>
> Q.     So you called her on her cell phone?
>
> A.     Texted her.
>
> Q.     You texted her?
>
> A.     Uh-huh.
>
> Q.     And she texted you back?
>
> A.     Uh-huh.
>
> Q.     What did – what did she say?
>
> A.     She said mine would be different than hers. She doesn't really know.
>
> Q.     Did you have a chance to talk to [Doe] after her deposition?

| | | |
|---|---|---|
| A. | | Yeah. |
| Q. | | And did you talk to her over the phone or via text? |
| A. | | Text. |
| Q. | | And what did she tell you about her deposition? |
| A. | | She just said they asked her questions about her personal life and then about the case. That's it. |

(Doc. 154-2 at 5–6.) Andrews characterizes this testimony as corroboration by Palmisano "that Doe has continued to defame Andrews well within the statute of limitations." (Doc. 154 at 3.)

This testimony cannot save Andrews's slander claim from the statute of limitations, however. First, there is no evidence of spoken statements at all; the exchanges Palmisano described were by text message. Second, none of these statements are defamatory to Andrews. Taking the evidence in the light most favorable to Andrews for purposes of Doe's motion, Doe texted Palmisano that their depositions would be different lengths and that Doe's deposition had included questions about Doe's personal life and about the case. Palmisano did not testify that Doe texted her a report of the answers Doe had given to any of those questions. Nor can the Court reasonably infer Doe made any statements to Palmisano about Andrews during the exchange, let alone any defamatory ones. And as to Andrews's request for the Court to reject Doe's declaration as not credible when taken in conjunction with Palmisano's deposition testimony, the Court is not permitted to weigh the evidence or make credibility determinations at summary judgment. *See Anderson*, 477 U.S. at 255. Doe is entitled to judgment as a matter of law on Andrews's slander cause of action.

### b. Libel

Doe argues Andrews has not identified any actionable written statements by Doe. Andrews's response does not identify any written statements; instead, it argues Doe's declaration to the contrary is not credible.

Doe has met her initial burden of showing there is no genuine dispute as to any fact material to Andrews's libel claim and she is entitled to judgment as a matter of law. Andrews has not met his burden to respond "with specific facts to demonstrate that there is a genuine issue for trial." *Chao*, 285 F.3d at 424. Doe is therefore entitled to judgment as a matter of law on Andrews's libel cause of action.

### 2. Intentional Infliction of Emotional Distress

Andrews's second counterclaim against Doe is for intentional infliction of emotional distress. The governing law for this cause of action is the same as the Court set out in Section III(A)(3) above.

Doe argues Andrews has insufficient proof of serious mental injury. Andrews argues his deposition testimony demonstrates a sufficient emotional injury. Andrews testified he saw a counselor six or seven times; he is terrified to go out and talk to people, especially girls, and now spends most of his time alone in his room rather than going out with friends; he goes by a different first name at his new college to avoid being associated with the allegations against him in this lawsuit; his family—which the Court infers assumes Andrews himself—has been under a "giant stress"; he has lost many hours of sleep; and his whole life has changed. (Doc. 154-3 [Andrews Dep.] at 5–6.)

Taking the evidence in the light most favorable to Andrews for purposes of Doe's motion, and applying the law as the Court explained it above for Doe's claim for a serious

mental injury, the Court concludes Andrews has provided sufficient evidence from which a reasonable jury could conclude he suffered a serious mental injury. Doe is not entitled to judgment as a matter of law on Andrews's cause of action for intentional infliction of emotional distress.

### 3. Attorney Fees

Andrews includes a demand for attorney fees in his Counterclaim. (Doc. 46 at 6, ¶ 5.) Tennessee follows the American rule, which requires each party to bear its own attorney fees unless a contract or statute provides otherwise. *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008). Doe argues there is no contractual or statutory basis for Andrews to recover attorney fees. Andrews does not respond to this argument. Doe is correct. Andrews's request for attorney fees will be dismissed.

## IV. <u>CONCLUSION</u>

The Court will **GRANT** Andrews's motion (Doc. 124) **IN PART** as to false imprisonment because there is no evidence Doe was detained or restrained against her will. The Court will **DENY** the motion **IN PART** as to assault and battery because evidence of intent to harm is not required for either tort. Andrews has not moved for summary judgment on sexual assault, aggravated sexual battery, sexual battery, rape, or aggravated rape; these causes of action are therefore not addressed in this Memorandum. The Court will **DENY** the motion **IN PART** as to intentional infliction of emotional distress because there is sufficient evidence from which the jury could conclude that Andrews's conduct was so outrageous it cannot be tolerated by civilized society and that Doe has suffered a serious mental injury. The Court will also **DENY**

the motion **IN PART** to the extent it argues Doe has not provided evidence of damages or of intentional, fraudulent, malicious, or reckless conduct by Andrews.

The Court will **GRANT** Doe's motion (Doc. 136) **IN PART** as to defamation because Andrews's slander action is barred by the statute of limitations and because Andrews has not identified any actionable, defamatory written statements by Doe about Andrews.  The Court will also **GRANT** the motion **IN PART** as to Andrews's request for attorney fees because Andrews has not shown a statutory or contractual basis to recover attorney fees.  The Court will **DENY** the motion **IN PART** as to intentional infliction of emotional distress because Andrews, like Doe, has presented sufficient evidence from which the jury could conclude Andrews has suffered a serious mental injury.

**An appropriate order will enter.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**